UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

 John Harlan Gruber,      Case No. 13-31898-GMH

    Debtor.         Chapter 13

First National Bank - Fox Valley,

    Plaintiff,

v.              Adv. No. 13-02797

John H. Gruber,

    Defendant.

**DECISION**

   The plaintiff, First National Bank – Fox Valley, seeks a declaratory judgment that 242 acres of vacant land located in Rusk County is not property of the defendant-debtor's, John Harlan Gruber's, bankruptcy estate. In the alternative, First National seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) and abandonment pursuant to 11 U.S.C. §554(b) so that it may exercise its state-law execution rights against the property.

I

   On February 8, 2008, Gruber executed a note that named First National as payee in the amount of $257,596.13 and granted First National a mortgage on his homestead to secure his obligation under the note. Gruber defaulted on the note. First National

accelerated the amount due and sued Gruber to collect. On January 6, 2012, the Fond du Lac County Circuit Court awarded First National a money judgment against Gruber in the amount of $269,506.77.

The judgment was docketed in Fond du Lac County, Wisconsin, on January 9, 2012, and in Rusk County, Wisconsin, on January 19, 2012. First National sought to enforce its judgment by executing on 242 acres of vacant land Gruber owns in Rusk County.

On April 4, 2012, the Fond du Lac County Circuit Court issued an execution of judgment to the sheriff of Rusk County, directing the sheriff to sell Gruber's vacant land to satisfy First National's judgment. The execution was recorded in the Rusk County Register of Deeds on May 3, 2012. The Rusk County Sheriff complied with the execution, selling the 242 acres of vacant land at a public auction conducted at the Rusk County Courthouse on June 5, 2012. First National was the high bidder and purchased the property for $171,000.

The sheriff's certificate of execution sale, which was recorded in the Rusk County Register of Deeds on June 21, 2012, explains, "the sale [would not] become absolute and a lawful deed of conveyance of [the] premises [would not] be delivered to [First National until] the expiration of the redemption period . . . on September 5, 2013." No. 13-02797, CM-ECF No. 1, at 19; see also Wis. Stat. §§815.44, 815.54 & 815.55. The last day that Gruber could redeem the property or challenge the sale was June 5, 2013. Wis. Stat. §§815.39 & 815.40. September 5, 2013, was the last day that creditors holding a mortgage or a judgment lien on the property could exercise their rights under Wis. Stat. §815.44 to acquire First National's interest in the property. No one sought to redeem the property or acquire First National's rights.

Instead, on September 4, 2013—one day before the creditors' period to acquire First National's rights expired—Gruber filed a petition for bankruptcy under chapter 13 of title 11 of the United States Code. Gruber proposes a debt adjustment plan providing that he will retain the Rusk County land and satisfy First National's judgment by paying

2

First National $77,713.56 through the plan.[1] He seeks to fund the plan in substantial part with cash proceeds from logging the Rusk County land.

On October 11, 2013, First National filed this adversary proceeding in which it seeks (i) a declaratory judgment that the Rusk County land is not property of Gruber's bankruptcy estate, (ii) a declaratory judgment that First National does not need to seek relief from the automatic stay to exercise its state-law rights with respect to the Rusk County land, and (iii) an order enjoining Gruber from logging that land. No. 13-02797, CM-ECF No. 1, at 3. Gruber timely answered the complaint. First National separately moved for relief from the automatic stay and abandonment in the underlying bankruptcy case.

At a December 2, 2013 initial pretrial hearing on First National's complaint and its motion for relief from the automatic stay and abandonment, I directed the parties to address whether the Rusk County land is property of Gruber's bankruptcy estate, and, if so, whether First National is entitled to relief from the automatic stay to exercise its state-law rights to acquire that land.

First National argues that the land is not property of the bankruptcy estate because Gruber, as of the date he filed his bankruptcy petition, neither had a "right to redeem [] nor any right to challenge [any] irregularities . . . in the execution sale." *Id.*, CM-ECF No. 7, at 2. According to First National, all that remains for Gruber's interest in the property to vest in First National is for the sheriff to execute a deed. *Id.* at 4–5. In the alternative, First National argues that (i) the sheriff's execution of a deed following the expiration of both redemption periods is a ministerial act not subject to the automatic stay, and (ii) if the automatic stay does apply to the sheriff's execution of a deed, the stay should be lifted to allow that act because Gruber lost any right to cure his default when his right to redeem the Rusk County land expired before he filed his bankruptcy petition. *Id.* at 4–8.

---

[1] At a November 20, 2013 hearing, Gruber explained that he intends to file an amended chapter 13 plan once this adversary proceeding and First National's motion for relief from the automatic stay are resolved. Thus, although payment of $77,713.56 will not adequately satisfy First National's secured claim, this shortfall has no bearing on the issues currently presented for decision.

Gruber responds that the Rusk County land is property of the bankruptcy estate because he still owned the land on the date he filed his bankruptcy petition. No. 13-02797, CM-ECF No. 8, at 2–4. To support this response, Gruber asserts that legal title cannot transfer until the sheriff executes a deed to First National and the sheriff did not execute (and could not have executed) such a deed before Gruber filed his bankruptcy petition. Gruber also argues that the sheriff's execution of a deed is not a ministerial act because that act will transfer ownership from Gruber to First National. In short, Gruber contends that the Rusk County land is property of his bankruptcy estate and any act that would transfer ownership or possession of that land is prohibited by the automatic stay imposed by 11 U.S.C. §362(a). *Id.* at 3–4.

II

This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (G). Following a review of the parties' briefs, the uncontested facts related to the sale of the Rusk County land, and the record before me, I conclude that First National's request for a declaration that the Rusk County land is not property of Gruber's bankruptcy estate and its request for a declaration that the automatic stay does not prohibit the sheriff from issuing a deed that conveys all of Gruber's right, title, and interest in the property to First National can both be adjudicated as a matter of law. However, whether there is cause sufficient to grant First National relief from the automatic stay, to enjoin Gruber from logging the Rusk County land while this action is pending, and to order the trustee to abandon the land—if necessary—requires further proceedings. My conclusions of law on the issues that are ripe for adjudication are described below.

A

Section 541(a) of title 11 provides that the filing of a bankruptcy petition creates a bankruptcy estate and that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). Although the bankruptcy estate is a creation of federal law, its *res* is a creature of state law: "[w]hether the debtor has an interest in property . . . and the nature of [such an] interest" are questions generally determined by state law. *In re Jones*, 768 F.2d 923, 926–27 (7th Cir. 1985); see also *Butner v. United States*, 440 U.S. 48, 55 (1979) (explaining that in

4

bankruptcy, property interests are "defined by state law[ u]nless some federal interest requires a different result"); *In re Kuehn*, 563 F.3d 289, 293 (7th Cir. 2009). Moreover, the bankruptcy estate only encompasses the interests in property that a debtor holds as a matter of state law at the time he files his petition, "no more, no less." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984). Accordingly, to determine whether Gruber's bankruptcy estate has an interest in the Rusk County land, one must look to Wisconsin law to determine whether Gruber held any interest in that land at the time he filed his bankruptcy petition, and, if so, what the extent of his interest was on the petition date.

As explained above, before Gruber filed for bankruptcy, First National had sued him for his failure to pay money owed under a note. After obtaining a money judgment for $269,506.77, First National sought to satisfy that judgment by executing on Gruber's property in Rusk County. After First National filed an execution proceeding in Rusk County, the sheriff provided notice of an intended sale, sold the property on June 5, 2012, and recorded a certificate of execution sale on June 21, 2012, in the Rusk County Register of Deeds.

1

Wisconsin law provides for two redemption periods following an execution sale of a judgment debtor's interest in real property. Both must pass before the purchaser at the execution sale can obtain title free and clear of a judgment debtor's interest in the property. First, Wisconsin law provides that the judgment debtor has one year after the execution sale in which he—or his successors in interest—may redeem the property sold: "[W]ithin one year after an execution sale the real estate sold . . . may be redeemed by the payment to the purchaser . . . of the sum paid on the sale thereof, together with the interest from the time of the sale", Wis. Stat. §815.39(1), and such a "[r]edemption from [an] execution sale of real estate may be made by a person whose right and title was sold", Wis. Stat. §815.40(1). Gruber's one-year redemption period expired on June 5, 2013. Gruber did not redeem his interest in the property sold or file for bankruptcy within that one-year period.

Second, Wisconsin law provides that creditors holding mortgages or judgment liens that encumber the property sold at the execution sale may step into the purchaser's

5

shoes by paying the purchaser the amount paid at the sale plus any interest that may have accrued. Section 815.44 of the Wisconsin Statutes provides, "Any creditor [of the judgment debtor] . . . having a judgment or recorded mortgage which is a lien upon the premises sold, . . . may . . . by paying the sum paid on the sale thereof, together with interest from the time of such sale, thereby acquire all the rights of the original purchaser". Wis. Stat. §815.44(2). This acquisition period begins when the judgment debtor's redemption period ends and expires three months later—fifteen months after the execution sale is completed. Wis. Stat. §815.44(1) & (2). Gruber filed his bankruptcy case on September 4, 2013, one day before any creditor holding a mortgage or judgment lien on the property lost the ability to acquire First National's interest in the property by paying First National the $171,000 (along with any interest that may have accrued) it bid at the execution sale.

Thus, Gruber filed his bankruptcy petition outside the one-year period Wisconsin law allows a judgment debtor to redeem property sold at an execution sale. See *Varco-Pruden Div. AMCA Int'l Corp. v. Hansen*, 448 N.W.2d 262, 264 (Wis. Ct. App. 1989). And, once that year has passed, a judgment debtor may only challenge the sale if he can establish "special circumstances of fraud or mistake amounting to a reasonable excuse for" not contesting the sale before the one-year redemption period expired. See *id*. at 263–64. Gruber alleges no grounds for making such a challenge.

But Wisconsin law is clear that a judgment debtor is not divested of his interest in the property simply because he no longer has the right to redeem the property. Title to property sold at an execution sale cannot be transferred to the purchaser free and clear of the judgment debtor's interest until the sheriff executes a deed in the purchaser's favor: "The deed [issued by the sheriff] shall convey [to the purchaser] all of the right, title and interest which was sold upon the execution". Wis. Stat. §815.55. Thus, Wisconsin law does not divest entirely a judgment debtor of his interest in the property sold at an execution sale until the sheriff executes a deed, which the sheriff cannot do until fifteen months after the sale: "The right and title of the person against whom the execution was issued, to any real estate which shall be sold thereby, shall not be divested by such sale until the expiration of fifteen months from the time of sale; and if such real estate shall not have been redeemed and a deed shall be executed in pursuance of a sale the grantee

6

shall be vested with the legal estate". Wis. Stat. §815.54. What is more, Wisconsin law requires that the purchaser (or a creditor who has acquired the purchaser's rights) make a demand on the sheriff to issue a deed: "If after the expiration of 15 months from the time of the sale of any real estate upon execution any part of the premises sold shall remain unredeemed, the sheriff . . . shall, on demand, execute a deed . . . to the person entitled to the deed." Wis. Stat. §815.55. The demand upon the sheriff to issue the deed must be made within 20 years of the sale: "[N]o deed shall be issued after 20 years from the date of the [execution] sale." *Id.*

The Wisconsin Supreme Court clarified long ago that a judgment debtor's possessory rights in property sold at an execution sale do not transfer to the purchaser until the sheriff issues a deed as provided in §815.54. In *Dean v. Pyncheon*, the court—applying the 1839 predecessor statutes controlling the enforcement of a judgment through execution, which at the time allowed a debtor to redeem two years after an execution sale and the debtor's creditors to redeem 27 months after the sale—held that a judgment creditor who had purchased property through an execution sale had no right of ejectment until both redemption periods had expired and the sheriff had executed a deed to the creditor. 3 Pin. 17, 25–27, 3 Chand. 9, 1850 WL 3340, at *5 (Wis. Dec. 1850); see also *Hammel v. Queen's Ins. Co. of Liverpool & London*, 11 N.W. 349, 350–51 (Wis. 1882).This holding makes clear that a judgment debtor's right to possess land sold at an execution sale cannot be terminated until both redemption periods expire and the sheriff executes a deed.

The debtor's possessory right following the completion of an execution sale is limited, however. A person rightfully entitled to possession of the land following the execution sale—presumably including the judgment debtor—is entitled to retain his possessory interest in the property but may not at any time following the completion of the sale use the property in any way that constitutes waste: "Any person entitled to the possession of lands sold under [a judicial sale] may, until the expiration of the time given by law for the person's possession, use and enjoy the same" in five specific ways that do not constitute waste. Wis. Stat. §844.05(2)(a)–(e). Moreover, the purchaser enjoys both the right to enjoin a judgment debtor from committing waste and a right to collect damages for any waste that the judgment debtor has committed, even before the

7

purchaser takes possession of the land: "The purchaser . . . of real estate . . . at [a] judicial sale . . . may sue to restrain the commission of waste during the period before the purchaser takes possession and may, in such an action or by a subsequent action, recover damages against any person for any waste committed by such person . . . after such sale." Wis. Stat. §844.05(1); see also Wis. Stat. §815.54 ("[T]he grantee shall be vested with the legal estate from the time of the sale for the purpose of an action for an injury to such real estate"); *Hammel*, 11 N.W. at 350–51 ("The purchaser . . . can maintain no action for any injury to the premises or the possession unless such injury amounts to . . . waste").

2

When Gruber commenced his bankruptcy case he held legal title to the 242 acres of vacant land in Rusk County because the fifteen-month redemption period had not expired—a necessary prerequisite to the sheriff issuing a deed that transfers legal title to the execution purchaser or one acquiring the rights of that purchaser. Wis. Stat. §§815.54 & 815.55. And because the sheriff had not executed (and could not have executed) a deed that conveyed Gruber's "right, title and interest" to First National or another creditor stepping into First National's shoes before he commenced his bankruptcy case, Gruber still held his "right . . . and interest" in the property when he filed his bankruptcy petition. Wis. Stat. §815.55; see also Wis. Stat. §815.54. Gruber's "right" in the property included the right to possess the property, see *Dean*, 1850 WL 3340, at *5, and the right to use the property in any manner that did not constitute waste, see Wis. Stat. §§844.05(2) & 815.54; *Hammel*, 11 N.W. at 350–51. Thus, Gruber's bankruptcy estate includes legal title to the Rusk County land, the right to possess the property, and the right to use it in a non-wasteful manner, because these are the interests that Gruber held in the property as a matter of Wisconsin law at the time he commenced his bankruptcy case. See 11 U.S.C. §541(a).

First National does not contest that Gruber held legal title and a possessory interest in the Rusk County land when he filed his bankruptcy petition. No. 13-02797, CM-ECF No. 7, at 2 & 4. First National instead argues that the Rusk County land is not included in Gruber's bankruptcy estate because at the time Gruber filed his petition he held only temporary possessory rights and lacked either a right of redemption or the right to challenge the execution sale. *Id*. at 2–4. First National contends that the property

is not included in Gruber's bankruptcy estate because "'Congress intended to exclude from the estate property of others in which [a] debtor had some minor interest such as a lien or bare legal title.'" *Id.* at 2 (quoting *Rodgers v. Cnty. of Monroe (In re Rodgers)*, 333 F.3d 64, 69 (2d Cir. 2003)).

First National is correct that at the time Gruber filed his bankruptcy petition his possessory interest in the Rusk County land was likely soon to be terminated by First National. But First National cites no authority to support the assertion that the temporary nature of Gruber's possessory right excludes the land from his bankruptcy estate. The text of §541(a) and its interpretive case law are to the contrary. Nothing in §541(a)'s text excludes property interests that are "temporary" at the time a debtor commences his bankruptcy case, and courts have applied the section to include in the estate property that the debtor only holds a temporary right at the time he files his bankruptcy petition. See *In re LaMont*, 740 F.3d 397, 406 n.11 (7th Cir. 2014) ("Even if the debtors only held the home in fee simple determinable, the property would still enter the estate"); *Still v. Hopkins (In re Hopkins)*, 494 B.R. 306, 316 (Bankr. E.D. Tenn. 2013) (holding that debtor's life estate was also included in her bankruptcy estate under §541(a)); 5 COLLIER ON BANKRUPTCY ¶541.04[2], at 541-19 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2013) ("[S]ection 541(a)(1) . . . is extremely broad and includes all rights and interests of the debtor in real property"). Indeed, although leaseholds are "temporary", there is no doubt that as a general matter a debtor's possessory interest in leased property is included in his bankruptcy estate. See 11 U.S.C §362(b)(22), (23) & (l)(4)(A); see also *In re Wyatt*, 173 B.R. 698, 702 (Bankr. D. Idaho 1994).

First National's argument based on the waning nature of Gruber's possessory right in the property might have more force if Gruber had been divested of his interest as a matter of law when the fifteen-month redemption period expired on September 5, 2013. In that instance, First National might have been able to argue successfully that Gruber's bankruptcy estate only included legal title and a possessory interest in the property for one day because that was the extent of Gruber's interest at the time he commenced his bankruptcy case. See *Goldberg v. Tynan (In re Tynan)*, 773 F.2d 177, 179–80 (7th Cir. 1985) (explaining that a debtor's filing of bankruptcy does not create property rights).

9

But that is not the case here. Again, Gruber cannot be divested of his right to the property until *both* fifteen months pass from the date of the sale *and* the sheriff executes a deed conveying Gruber's right, title, and interest in the property to First National or one acquiring First National's rights to the property. Wis. Stat. §815.54; *Dean,* 1850 WL 3340, at *5. Although the fifteen-month period has now passed, the property will remain in Gruber's bankruptcy estate until the sheriff executes a deed. For the same reason, Gruber's lack of a redemptive right or a right to challenge the execution sale at the time he filed his bankruptcy petition does not exclude the property from his bankruptcy estate. The extent of Gruber's redemption interest has no impact on his legal title or possessory interest in the property: The pre-petition expiration of Gruber's redemption right did not concurrently terminate his right to possess and use the property in any non-wasteful manner. *Dean,* 1850 WL 3340, at *5; *Hammel*, 11 N.W. at 350–51.

Accordingly, First National's reliance on *Rodgers* to support its position that property is not included in a debtor's bankruptcy estate when the debtor no longer has a right to redeem that property is misplaced. *Rodgers* dealt with the application of New York foreclosure law under which the completion of a foreclosure sale divests a debtor of all legal and equitable title in the property, regardless of "whether . . . a deed has been delivered to the purchaser." *Rodgers*, 333 F.3d at 67–69 (emphasis omitted). Thus, *Rodgers* provides no persuasive basis for concluding that Gruber lacked any substantial right to the Rusk County land under Wisconsin law as of the date he commenced his bankruptcy case.

Finally, any intent Congress may have had to exclude from the bankruptcy estate debtors' contingent or unvested interests in non-debtors' property is irrelevant here. As explained above, First National did not, and still does not, own the property located in Rusk County. Again, title to the property does not vest in First National until the sheriff executes a deed; thus, Gruber owned the property when he filed his bankruptcy petition. See Wis. Stat. §§815.54 & 815.55. As a result, including the Rusk County land in Gruber's bankruptcy estate does not incorporate property of another entity.

At the time Gruber filed his bankruptcy petition his interest in the property as determined under Wisconsin law included both legal title to the Rusk County land and

the right to use that land in a non-wasteful manner. Those interests are part of Gruber's bankruptcy estate. §541(a)(1).

B

Although fifteen months have now passed from the completion of the execution sale and First National is entitled as a matter of Wisconsin law to demand that the sheriff execute a deed conveying Gruber's "right, title and interest" in the property to First National, the question remains whether the automatic stay nonetheless prohibits these acts. First National argues that the sheriff is required by law to execute such a deed—and therefore such execution would arguably not run afoul of the automatic stay. But, as already explained, the sheriff is not required to execute a deed except "on demand" of the purchaser or a creditor who has acquired the purchaser's rights. See Wis. Stat §815.55. Thus, in this instance, the sheriff cannot execute such a deed until First National demands its execution. Because the Rusk County land is property of Gruber's bankruptcy estate, such a demand would violate the automatic stay because, minimally, it would constitute an "act to obtain possession of property of the estate". See 11 U.S.C. §362(a)(3).

First National also argues that the sheriff's execution of a deed is a ministerial act excepted from the automatic stay. But, again, First National must demand the deed before the sheriff is required to issue it. So, any exception to the automatic stay for the sheriff's act of issuing the deed will only be relevant if First National's demand is also somehow excepted from the prohibitions of §362(a).

Even though First National insists that the ministerial act exception allows the sheriff to execute a deed, First National's demand on the sheriff is not a ministerial act.[2]

---

[2] Section 362(b) provides a litany of exceptions to the automatic stay imposed by §362(a), 11 U.S.C. §362(b)(1)–(28), but it contains no ministerial act exception. That exception is a judicial creation, see *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 973–75 (1st Cir. 1997); *Rodgers*, 333 F.3d at 69, and the Seventh Circuit has not definitively recognized it, see *Bass v. Fillion (In re Fillion)* 181 F.3d 859, 861 n.2 (7th Cir. 1999); but compare *Lamont*, 740 F.3d at 405–06 ("[I]t is appropriate *to lift the automatic stay* so that the purchaser may pursue the ministerial steps to obtain legal title to property that he already has the right to own." (emphasis added)). As an original matter, one might question whether inferring an exception to the stay in addition to those extensively provided by the statue is a sensible course. See ANTONIN SCALIA &

11

Ministerial acts for purposes of the court-created stay exception are those that are clerical in nature. *Soares*, 107 F.3d at 974. An act is "clerical in nature" when it is "delineated by . . . a law or judicial decree with such crystalline clarity that nothing is left to exercise of the official's discretion or judgment". *Id*.

First National argues that the sheriff's execution of a deed to the Rusk County land is a ministerial act. But the sheriff may not execute a deed unless First National demands its execution. And First National is required neither by law nor judicial decree to make any demand on the sheriff. Its demand is merely a state-law right that it may exercise, absent application of the §362(a) automatic stay, fifteen months after the execution sale is completed.

First National's demand does not fall within any of §362(b)'s statutory exceptions from the automatic stay. See 11 U.S.C. §362(b)(1)–(28). Thus, First National's demand on the sheriff is not an act that is excepted from the automatic stay imposed on acts to obtain possession of estate property under §362(a)(3). Any such demand from First National would constitute an act "to obtain possession of property of [Gruber's bankruptcy] estate" in violation of the automatic stay. See §362(a)(3).

For these reasons, I conclude that the 242 acres of vacant land located in Rusk County is property of Gruber's bankruptcy estate and §362(a)(3) prohibits First National from demanding that the sheriff execute a deed conveying Gruber's right, title, and interest in that property to First National.

---

BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 108 (2012) (explaining that one should avoid supplying "'[t]he particular which is omitted from the particulars mentioned'" within a statutory provision, especially when the particulars enumerated in the statute become more extensive). Because this "exception" would not apply here in all events, this decision does not resolve whether the ministerial act exception is legitimate.

III

This conclusion resolves, in Gruber's favor, First National's request for a declaration that the Rusk County land is not property of Gruber's bankruptcy estate and its request for a declaration that the automatic stay does not prevent the sheriff from executing a deed to First National. But First National also seeks in this adversary proceeding an order enjoining Gruber from engaging in logging activities or committing other waste on the property until the sheriff executes a deed that conveys Gruber's right, title, and interest in the land to First National. In a separate motion, First National requests relief from the automatic stay and the trustee's abandonment of the property so that it can obtain a deed to the land from the sheriff. These requests, however, depend on the resolution of legal issues and, potentially, on findings of fact that the parties have not yet adequately addressed.

First National, for example, has yet to establish a right to enjoin Gruber "from engaging in logging activities or other waste upon the [vacant land] pending this action". No. 13-02797, CM-ECF No. 1, at 3. As explained above, when Gruber filed his bankruptcy petition he had—and thus his bankruptcy estate has—only the right to possess and use the land located in Rusk County in a non-wasteful manner without the equitable right to redeem the property. At first glance, Gruber's plan to harvest a substantial number of trees likely requires a use of the land that exceeds Gruber's limited use right: the Wisconsin Statutes provide that a pre-sale land owner with a right of possession has only a right to apply timber "to the necessary repairs of any fences, buildings or structures existing thereon at the time of such [judicial] sale." Wis. Stat. §844.05(d). This observation notwithstanding, First National has so far not attempted to show that its interest is sufficient to entitle it to an injunction barring Gruber's planned use of the land. In particular, First National has not demonstrated that 11 U.S.C. §1322(b)(2) does not allow Gruber to modify First National's rights in a way that affords him the ability to fund a plan by harvesting the land's trees. See 11 U.S.C. §1322(b)(2).

Further, First National has not established either a right to relief from the automatic stay to obtain legal title to the Rusk County land or that the court may order the trustee to abandon the property from Gruber's bankruptcy estate. As an initial matter, in the proceedings thus far, First National has entirely ignored the showing

13

necessary to establish that the court may order the trustee to abandon the property from the estate: it has presented no direct argument as to why the property "is burdensome to the estate or . . . is of inconsequential value and benefit to the estate." See 11 U.S.C. §554(b).

And First National's request for relief from the automatic stay has largely ignored §362(d), the Code section governing its request. First National's only argument in support of its right to relief from the automatic stay is that it lacks adequate protection. See 11 U.S.C. §362(d)(1) (a party in interest is entitled to relief from the automatic stay upon a showing of "cause, including the lack of adequate protection of an interest in property"). Presumably because the parties agreed to have the court first resolve the issues involving the estate's and First National's interest in the Rusk County land, they have yet to address whether First National lacks adequate protection.

The present record shows that First National has filed a claim in the amount of $299,205.93, which includes Gruber's $56,499.68 pre-petition mortgage arrears. This claim amount does not account for First National's interest in the Rusk County land. The land's $177,000 sale value reduces the amount of First National's claim to $122,205.93. First National also holds a lien on Gruber's residence, which according to Gruber's bankruptcy schedules, is worth $292,950. Although Gruber may be able to exempt $75,000 of the property's value from First National's collection, see Wis. Stat. §§815.18 & 815.20, and the residence is subject to a $22,514.23 tax lien that primes First National's lien, First National appears to enjoy an equity cushion of $73,229.84 (($292,950 - $22,514.23 - $75,000) - ($299,205.93 - $177,000) = $73,229.84). First National alleges that Gruber's homestead is worth "substantially less" than $292,950, but, again, the resolution of factual disputes about the value of First National's collateral awaits further proceedings. At present, therefore, the record lacks evidence sufficient to conclude that First National lacks adequate protection. And, if upon development of a full factual record First National is shown to be adequately protected, it will have to show other cause to establish that it is entitled to stay relief under §362(d)(1). See *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088–90 (4th Cir. 1986) (holding that equity cushion may support finding that a creditor's interest is adequately protected); see also *First Nat'l Bank & Trust Co. of Rockford v. Ausherman (In re Ausherman)*,

34 B.R. 393, 394 (Bankr. N.D. Ill. 1983) (explaining that a creditor's interest in real property is adequately protected as long as the value of the property "remain[s] relatively constant during the time between filing and conversion, dismissal, or confirmation").

First National suggests that preventing Gruber from committing waste on the Rusk County land is cause sufficient to grant First National relief from the automatic stay. Again, Wisconsin law affords First National as a judicial-sale purchaser the ability to seek legal and equitable relief for the commission of waste upon the land purchased. See Wis. Stat. §844.05(1). But the right to that relief under state law, which perhaps informs the substantive scope of First National's property right before it obtains a deed to the property, depends on First National's "interest [being] [ ]sufficient to entitle [it] to the relief demanded." Wis. Stat. §844.17(2); see also Wis. Stat. §844.16. First National has neither addressed these issues nor presented a sufficient factual basis for concluding that it is entitled to a modification of the stay.

First National also suggests that Gruber's inability to cure his default is cause sufficient to grant First National relief from the automatic stay. First National argues that Gruber has no right to cure his default because his right to redeem his interest in the Rusk County land ended before he filed his bankruptcy petition. In support of this argument, First National relies only on cases that hold that a debtor cannot cure a default on his principal residence after his right to redeem his interest in the property terminates. See No. 13-02797, CM-ECF No. 7, at 5–8 (citing *Colon v. Option One Mortg. Corp.*, 319 F.3d 912 (7th Cir. 2003); *In re Haake*, 483 B.R. 524, 531 (Bankr. W.D. Wis. 2012)).

If an execution sale of Gruber's principal residence were at issue, *Colon* might control, and First National might be entitled to relief from the automatic stay. *Colon* construes 11 U.S.C. §1322(c)(1)'s provision authorizing a chapter 13 plan to cure a default relating to a lien on a debtor's principal residence before the "residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law". 11 U.S.C. §1322(c)(1). *Colon* holds that §1322(c)(1)'s cure authority is unavailable to a debtor who no longer holds an equitable right to redeem his interest in his homestead under applicable state law—there, Illinois law—reasoning that once a debtor loses his right to redeem the property the residence is deemed "sold" at a foreclosure sale in

15

accordance with nonbankruptcy law. 319 F.3d at 920–21. Again, under Wisconsin law governing execution sales, Gruber's right to redeem the Rusk County land expired before he filed his petition; thus, if the land were Gruber's principal residence, it might be deemed "sold" for purposes of §1322(c)(1).[3]

But the Rusk County land is not Gruber's residence; thus, §1322(c)(1) does not apply here. That subsection provides an exception to §1322(b)(2)'s antimodification provision, which does not allow a chapter 13 plan to "modify the rights of holders of secured claims" that are "secured only by a security interest in real property that is the debtor's principal residence". §1322(b)(2). Unlike §1322(c)(1), §1322(b)(2) imposes no express limitation on a chapter 13 plan's ability to modify the rights of a holder of a secured claim based on the occurrence of any sale in accordance with nonbankruptcy law. See §1322(b)(2). Gruber's chapter 13 plan can modify First National's rights to the vacant Rusk County land to the full extent allowed under §1322(b)(2). Neither party, however, has adequately addressed the extent to which First National's rights may be so modified.

First National might be entitled to stay relief if Gruber cannot show that the land is necessary to an effective reorganization, because Gruber has no equity in the Rusk County land. See 11 U.S.C. §362(d)(2) (requiring the court to grant relief from the automatic stay to a party in interest with respect to real property when "the debtor does not have [ ] equity in [the] property and . . . such property is not necessary to an effective reorganization"). This showing, in turn, requires Gruber to establish that there is a reasonable possibility that he can confirm and successfully complete his proposed chapter 13 plan. See *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988).

The record, however, lacks any evidence that Gruber has the ability to successfully complete his chapter 13 plan. Gruber's schedule I reflects that he will

---

[3] It is not wholly clear when a debtor's primary residence sold under chapter 815 of the Wisconsin Statutes— rather than under chapter 846—would be deemed "sold at a foreclosure sale" for purposes of §1322(c)(1). This decision does not need to resolve this issue, however, because the Rusk County land is not Gruber's primary residence.

receive $2,993.67 in monthly income from "real property", although his schedules do not specify further what this income entails. His schedule B reflects that he will receive a total of $125,000 from logging the Rusk County land over two years. Gruber's chapter 13 plan provides no further insight, stating only that he "will have the timber on the [Rusk County land] logged . . . over the next two [ ] years [and a]ll net proceeds from the logging shall be paid into the plan." No. 13-31898, CM-ECF No. 2, at 6. At a minimum, Gruber will have to present evidence demonstrating that (i) he has the ability, experience, and means necessary to log the land; (ii) he has sufficient income to pay a third party to log the land if he is not going to personally do so; (iii) he can make a sufficient profit from logging the land to make the required monthly plan payments; and (iv) there is a market sufficient to enable Gruber to sell the timber that is logged consistently over a two-year period.

Further, there may be no reasonable possibility that Gruber's plan can be confirmed. As already alluded to, confirmation appears to depend in part on Gruber's ability to show that §1322(b)(2) allows him to "modify" First National's right to prevent waste on the property before it acquires title. But Gruber may have to show that §1322(b)(2) allows an even broader "modification": If First National has become the equitable owner of the land because the fifteen-month redemption period expired post-petition, Gruber's plan to log the land for five years may deprive First National of a property right in a way not authorized by §1322(b)(2). Cf. *Goodell v. Blumer*, 41 Wis. 436, 1877 WL 3595 (1877). Given Gruber's lack of an equitable right to redeem the property when he filed his bankruptcy petition, First National's state-law rights in the property when Gruber filed his petition, and the state-law rights First National would currently enjoy absent Gruber's bankruptcy, Gruber's use of §1322(b)(2) to allow him to redeem his interest in the property through his chapter 13 plan may run afoul of the well-established principle that the Code takes property rights as they are found under state law. See *Butner*, 440 U.S. at 54–55; *In re Kuehn*, 563 F.3d at 293; *Tynan*, 773 F.2d at 179–80. And, if at all permissible, the plan's proposal to fund payments by harvesting the vacant land's trees seems only to give rise to a corresponding cause of action by First National against Gruber for waste, the creation of which potentially implicates 11 U.S.C. §1325(a)(3)'s limitations on confirmation.

17

\* \* \* \*

In all events, the record that the parties have thus far developed does not contain facts or legal authority sufficient to decide either First National's request for an order enjoining Gruber from logging the trees on the Rusk County land or its request for relief from the automatic stay and abandonment. The parties should be prepared to address these issues, as well as the proceedings needed to develop the record sufficiently to resolve them, at a hearing in the Winnebago County Courthouse on May 1, 2014, at 10:30 a.m.

The court will enter a separate order declaring that the vacant land located in Rusk County is property of Gruber's bankruptcy estate and §362(a)(3) prohibits (absent relief from the stay under §362(d)) First National from demanding that the sheriff execute a deed conveying Gruber's right, title, and interest in that property to First National.

April 16, 2014

_____
G. Michael Halfenger
United States Bankruptcy Judge

18